Robert Hernquist, Esq.
Nevada Bar No. 10616
Brian J. Pezzillo, Esq.
Nevada Bar No. 7136
HOWARD & HOWARD ATTORNEYS PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
Telephone: (702) 257-1483
Facsimile: (702) 567-1568
Email:     rwh@h2law.com
           bjp@h2law.com

*Attorneys for Third Part Defendant*
*Omni Financial, LLC*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| WELLS FARGO BANK, N.A., AS TRUSTEE FOR THE POOLING AND SERVICING AGREEMENT DATED AS OF AUGUST 1, 2005 PARK PLACE SECURITIES, INC. ASSET-BACKED PASS-THROUGH CERTIFICATES SERIES 2005-WHQ4,<br><br>Plaintiff,<br><br>vs.<br><br>FIRST 100, LLC; BRADLEY L. FOOTE; STEPHEN B. KEHRES; CANYON HILLS LANDSCAPING MAINTENANCE ASSOCIATION, INC.,<br><br>Defendant, | Case No.: 3:17-cv-00062-MMD-WGC<br><br>**OMNI FINANCIAL, LLC'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OF WELLS FARGO BANK, N.A., AS TRUSTEE FOR THE POOLING AND SERVICING AGREEMENT DATED AS OF AUGUST 1, 2005 PARK PLACE SECURITIES, INC. ASSET-BACKED PASS-THROUGH CERTIFICATES SERIES 2005-WHQ4** |
| BRADLEY L. FOOTE; STEPHEN B. KEHRES,<br><br>Counterclaimant,<br><br>vs.<br><br>WELLS FARGO BANK, N.A., AS TRUSTEE FOR THE POOLING AND SERVICING AGREEMENT DATED AS OF AUGUST 1, 2005 PARK PLACE SECURITIES, INC. ASSET-BACKED PASS-THROUGH CERTIFICATES SERIES 2005-WHQ4,<br><br>Counterdefendant. | |

BRADLEY L. FOOTE; STEPHEN B. KEHRES,

  Third Party Plaintiffs,

vs.

OMNI FINANCIAL, LLC, a California Limited Liability Company; and COLGAN FINANCIAL GROUP, INC., a Connecticut corporation,

  Third Party Defendants.

Defendant Omni Financial, LLC ("Omni") submits the following Opposition to the Motion for Partial Summary Judgment filed on May 29, 2018 (the "Motion," or "Mtn.") [ECF 50[1]].

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. PRELIMINARY STATEMENT

WELLS FARGO BANK, N.A., AS TRUSTEE FOR THE POOLING AND SERVICING AGREEMENT DATED AS OF AUGUST 1, 2005 PARK PLACE SECURITIES, INC. ASSET-BACKED PASS-THROUGH CERTIFICATES SERIES 2005-WHQ4 ("Wells Fargo" or "Plaintiff") filed a Motion for Summary Judgment on May 29, 2018 [ECF 50] seeking to invalidate a Homeowner's Association ("HOA") foreclosure sale. Wells Fargo did not name Omni in its Complaint, but rather, Omni was named as a Third-Party Defendant by Defendants Bradley Foote and Stephen Kehres (collectively "Defendants"). *See* Third Party Complaint filed on July 26, 2017 [ECF 27]. The sole causes of action asserted against Omni are for Quiet Title and Equitable Mortgage. *Id.* Omni's interest in the property is a Deed of Trust which was recorded by Omni to secure a $5,000,000 loan. *Id.* at ¶14. Although Wells Fargo does not specifically state what parties it seeks a summary judgment against, it is presumed that it seeks to quiet title against all parties and thus this Opposition is respectfully submitted.

---

[1] All ECF references are to docket numbers in the above captioned action, unless otherwise noted.

Defendant Omni Financial, LLC's Opposition to Motion for Summary Judgment

Plaintiff bases its Motion on essentially four grounds: 1) Plaintiff did not receive notice of the HOA sale; 2) the presence of a mortgage protection clause in the CC&R's prevented the HOA from asserting and foreclosing a lien which was senior to that of Plaintiff; 3) the super-priority portion of the HOA lien was satisfied; and, 4) Defendants were not bona-fide purchasers such that they should receive protection under Nevada law. As set forth herein, each of these arguments fails. Plaintiff admits that it received notice of the HOA's intention to foreclose upon its lien, albeit to an address which was different from that which was listed on the publicly recorded document. The issue of the "mortgage protection" clause of the CC&R's has been expressly addressed by numerous courts and it has been determined that such a clause cannot constitute a waiver of Nevada statutes and therefore does not defeat an HOA foreclosure. There has been no competent evidence, let alone conclusive evidence, that the super-priority portion of the HOA's lien was ever satisfied as claimed by Plaintiff, and finally, there is no evidence that the purchaser of the subject property was not a bona fide purchaser as no evidence has been offered demonstrating that any party had knowledge of a <u>superior</u> interest in the property prior to purchase. Accordingly, summary judgment should be denied.

## II. STATEMENT OF FACTS

The facts, in so far as they are listed in the Motion, are accurate in that they are primarily based upon documents which have been recorded as public records. The contents of the documents are not in dispute, however, what is in dispute is the interpretation of those documents and their legal significance. As set forth herein, the documents relied upon do not support the granting of a summary judgment and accordingly, the Motion should be denied.

## III. LAW AND ARGUMENT

### A. Summary Judgment Standard

The standard of summary judgment set forth in the moving papers is correct in so far as it goes, however, the Motion does not address the fact that only admissible evidence may be relied

3

upon by the Court in ruling upon a summary judgment. *See* Fed. R. Civ. P. 56(e). In addressing this requirement the Ninth Circuit Court of Appeals has stated:

> A trial court can only consider admissible evidence in ruling on a motion for summary judgment. *See* Fed.R.Civ.P. 56(e ); *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir.1988). Authentication is a "condition precedent to admissibility," and this condition is satisfied by "evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed.R.Evid. 901(a). We have repeatedly held that unauthenticated documents cannot be considered in a motion for summary judgment. *See Cristobal v. Siegel*, 26 F.3d 1488, 1494 (9th Cir.1994); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550-51 (9th Cir.1989); *Beyene*, 854 F.2d at 1182; *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir.1987); *Hamilton v. Keystone Tankship Corp.*, 539 F.2d 684, 686(9th Cir.1976).

*Orr v. Bank of Am., NT & SA*, 285 F.3d 764, (9th Cir. 2002). As set forth herein, numerous allegations and conclusions are based upon information which is not admissible, or lack an evidentiary basis. This includes an "expert" opinion of a real estate appraiser which, by its own admission is based upon "extraordinary" assumptions. Such unsupported "assumptions" cannot form the basis of a summary judgment and therefore are properly ignored. Likewise, Plaintiff asserts various "facts" which are supported by nothing more than its subjective belief. Again, such assertions do not form a proper basis upon which to seek summary judgment.

**B. Plaintiff's Reliance on *Bourne Valley* is Misplaced and Plaintiff Has Failed to Demonstrate That the HOA Failed to Provide Adequate Notice of the Lien Foreclosure**

Plaintiff argues in its Motion that the HOA foreclosure at issue is invalid because Plaintiff did not receive adequate notice of the sale. *See* Motion, pp. 8 – 9 [ECF 50]. In making this argument, Plaintiff relies upon *Bourne Valley Court Trust v. Wells Fargo Bank, N.A.*, 832 F.3d 1154 (9th Cir. 2016). Although Plaintiff argues that the 9th Circuit Court of Appeals ruled that the statute at issued herein, NRS 116.3116(2), was unconstitutional, in reality, only the "opt in" portion of NRS Ch. 116 was ruled unconstitutional. This very issue was addressed in *The Bank of N.Y. Mellon v. GR Invs., LLC*, 2:16-cv-1959-JCM-CWH (D. Nev. May 25, 2018)(ECF 49):

> BNYM has failed to show that *Bourne Valley* is applicable to its case. Despite BNYM's erroneous interpretation to the contrary, *Bourne Valley* did not hold that the entire foreclosure statute was facially unconstitutional. At issue in *Bourne Valley* was the constitutionality of the "opt-in" provision of NRS Chapter 116, not the statute in its entirety. Specifically, the Ninth Circuit held that NRS 116.3116 's "opt-in" notice scheme, which required a HOA to alert a mortgage lender that it intended to foreclose only if the lender had affirmatively requested notice, facially violated mortgage lenders' constitutional due process rights. *Bourne Valley*, 832 F.3d at 1157-58. As identified in *Bourne Valley*, NRS 116.31163(2) 's "opt-in" provision unconstitutionally shifted the notice burden to holders of the property interest at risk—not NRS Chapter 116 in general. *See id*. at 1158.

*Id.* at pp. 14 – 15.  Here, Plaintiff does not argue that it did not receive actual notice of the HOA foreclosure.  In fact, Plaintiff acknowledges that notice of the foreclosure was provided to it.  *See* Motion, p. 11, lns. 1 – 2; *see also* Motion, Ex. 5 [ECF 50-5, pp. 11, 21].  The sole argument raised by Plaintiff is that the notice was mailed to an address in San Francisco as opposed to an address contained in the assignment by which Plaintiff acquired its interest in the real property.  *See* Motion, Ex. 1 [ECF 50-1].  Plaintiff offers no evidence that it did not receive actual notice of the HOA sale or the fact that the notice was provided to it via certified mail.  Indeed, it is undisputed Plaintiff did receive notice as a copy of the stamped, certified mail receipt is included in the Motion as Ex. 5 [ECF 50-5, p. 21].  It appears that the Plaintiff is asking the Court to assume that it did not receive "adequate" notice.  Absent admissible evidence, however, such an assumption is not warranted.

Even if actual notice had not been provided, as noted in *The Bank of New York Mellon*, "due process does not require actual notice." *Id.* at 15, *citing Jones v. Flowers*, 547 U.S. 220, 226 (2006).  The Court, therein, further noted:

> Due process does not require actual notice. *Jones v. Flowers*, 547 U.S. 220, 226 , 126 S. Ct. 1708 , 164 L. Ed. 2d 415 (2006).  Rather, as set forth above, it requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 , 314 , 70 S. Ct. 652 , 94 L. Ed. 865 (1950); *see also Bourne Valley*, 832 F.3d at 1158.

5

Defendant Omni Financial, LLC's Opposition to Motion for Summary Judgment

> Here, adequate notice was given to the interested parties prior to extinguishing a property right. The HOA has provided proof of mailing for the notice of default and the notice of foreclosure sale to BNYM and other interested parties. (ECF No. 40). As a result, the notice of trustee's sale was sufficient notice to cure any constitutional defect inherent in NRS 116.31163(2), as it put BNYM on notice that its interest was subject to pendency of action and offered all of the required information.

*The Bank Of N.Y. Mellon v. GR Invs., LLC*, at 11.  As Plaintiff has failed to establish that the notice that was undisputedly provided was not reasonably calculated to provide adequate notice, the Motion should be denied.

### C. Plaintiff Has Failed to Established The Foreclosure Sale Was Commercially Unreasonable.

Plaintiff contends that the sale price for the subject Property at the foreclosure sale was grossly inadequate, and therefore demonstrates that the underlying sale is commercially unreasonable and should be set aside. (*See* Motion, pp. 17 - 20).  As set forth below, the Nevada Supreme Court has made it eminently clear that a low price, regardless of whether it is below 20% of "fair market value" is not sufficient in of itself to demonstrate an HOA foreclosure sale was unreasonable. Furthermore, in the context of NRS Ch. 116 quiet title cases, lenders/lienholders such as Plaintiff bears the burden of proving that the underlying sale should be set aside. *Nationstar Mortg., LLC v. Saticoy Bay LLC Series 2227 Shadow Canyon*, 405 P.3d 641, 646 (Nev. 2017) (hereafter, "*Shadow Canyon*"). A low price, even one that is grossly inadequate must be accompanied by a showing of fraud, oppression, or unfairness:

> However, even assuming that the price was inadequate, that fact standing alone would not justify setting aside the trustee's sale. In California, it is a settled rule that inadequacy of price, however gross, is not in itself a sufficient ground for setting aside a trustee's sale legally made; there must be in addition proof of some element of fraud, unfairness, or oppression as accounts for and brings about the inadequacy of price.' Several earlier California cases are cited. The allegation of value was $25,000 and the testimony as to value was conflicting. The sale price was $5,025. (In approving the rule thus stated, we necessarily reject the dictum in

6

Defendant Omni Financial, LLC's Opposition to Motion for Summary Judgment

> *Dazet v. Landry*, *supra*, implying that the rule requiring more than mere inadequacy of price will not be applied if 'the inadequacy be so great as to shock the conscience.)

*Golden v. Tomiyasu*, 79 Nev. 503, 514-15, 387 P.2d 989, 995 (1963) (*quoting Oller v. Sonoma County Land Title Co.*, 137 Cal.App.2d 633, 290 P.2d 880 (1955)), *accord Shadow Wood Homeowners Assoc. v. N.Y. CMTY Bancorp, Inc.*, 366 P.3d 1105, 1111 92016) ("As discussed above, demonstrating that an association sold a property at it's foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a showing of fraud, unfairness, or oppression."); *Long v. Towne*, 98 Nev. 11, 13, 639 P.2d 528, 530 (1982) ("Mere inadequacy of price is not sufficient to justify setting aside a foreclosure sale, absent a showing of fraud, unfairness or oppression."). This position has also been reiterated by the Nevada Supreme Court in more recent decisions. *See Shadow Canyon*, 405 P.3d at 643 ("we clarify that *Shadow Wood* did not overturn this court's longstanding rule that 'inadequacy of price, however gross, is not in itself a sufficient ground for setting aside a trustee's sale' absent additional 'proof of some element of fraud, unfairness, or oppression as accounts for and brings about the inadequacy of price'").

In support of its position, Plaintiff argues in contravention of *Shadow Canyon*, contending that Nevada has adopted the Restatement position which arguably calls into question the legitimacy of a foreclosure sale which results in a sales rice which does not exceed 20% of the fair market value of the property. *See* Motion, p. 18, lns. 23 – 27. This, however, is a misinterpretation of the Court's decision in *Shadow Wood*, which did not adopt the Restatement approach. *See Shadow Wood*, 366 P.3d at 1112-13. This was further expressly clarified in the recent *Shadow Canyon* decision, in which the Court stated "[t]he citation to the Restatement in *Shadow Wood* cannot reasonably be construed as an implicit adoption of a rule that requires

7

Defendant Omni Financial, LLC's Opposition to Motion for Summary Judgment

invalidating any foreclosure sale with a purchase price less than 20 percent of a property's fair market value." *Shadow Canyon*, 405 P.3d at 642 -643. Thus, there can be no question that, in Nevada, according to *Shadow Wood*, the Restatement approach has not been adopted, and inadequate price alone is not sufficient to set aside a foreclosure sale.

It must also be noted that no admissible evidence has been offered that would support a showing of fraud, oppression or unfairness. Plaintiff offers only its opinion that the manner in which the property was sold was improper. *See* Motion, p. 19. The argument regarding the unfairness is not supported by undisputed, factual evidence. Again, Plaintiff asks the Court to assume that the manner in which the foreclosure necessarily resulted in a low sales price. In support of its argument, Plaintiff offers an appraisal of the value of the subject property. *See* Motion, Ex. 6 [ECF 50-6]. The appraisal, however, far from supporting a motion for summary judgment, establishes questions of fact which warrant denial of the pending motion.

The appraisal was conducted in 2017, years after the foreclosure sale. *Id.* at 1 [ECF 50-6, p. 2]. In the final paragraph of the first page of the report it is noted that the appraisal is based, not upon personal knowledge of the appraiser, but upon assumptions:

> As of the effective date of this appraisal, the subject property is **assumed** to be in average condition. We are not aware of any major repairs, renovation, or remodeling that had been done or needed to be done as of the date of value. The effective age is based on the appraiser's previous physical drive through the neighborhood and surrounding area in March 2017 as well as from data obtained from MLS(if available)m, public records as well as other sources. Exterior photographs were obtained from Washoe County Assessor records, Google Maps and MLS if available. An **extraordinary assumption is made** that the interior is in similar condition as the exterior and that the condition was similar at the effective date of this appraisal. **The use of the extraordinary assumption may have affected the assignment results.**

8

Defendant Omni Financial, LLC's Opposition to Motion for Summary Judgment

*Id.* (emphasis added).  Additionally, on page 3 of the report [ECF 50-6, p.4] it is further noted that "This report is also subject to other Hypothetical Conditions and/or Extraordinary Assumptions as specified in the attached addenda."  Given the fact that Plaintiff's own estimations are subject of "extraordinary" assumptions, it cannot be argued that the amount paid at the subject foreclosure sale was not commensurate with market value of the property given all circumstances.  *See United States v. Cartwright*, 411 U.S. 546, 551, 93 S.Ct. 1713, 1716 (1973)("Fair market value" is "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts."); *see also McCarran Int'l Airport v. Sisolak,* 122 Nev. 645, 672, 137 P.3d 1110, 1128 (2006)("[i]n determining fair market value, the trier of fact may consider any elements that fairly enter into the question of value which a reasonable businessman would consider when purchasing.").  Accordingly, questions of fact exist regarding the value of the subject property at the time of the foreclosure sale.  No evidence has been offered that there was more than one party interested in purchasing the property and thus, the sales price, although low, may be commensurate with the fact that there was little or no interest from the public at large in purchasing the property.

Plaintiff has offered a brief argument that the notices provided regarding the foreclosure by the HOA did not contain a breakdown of the amount which constituted a super-priority under Nevada law.  *See* Motion, pp. 10 - 11.  Plaintiff points to no authority that such a breakdown need have been included.  Likewise, Plaintiff does not address the fact that it apparently took no action despite have received notice of the foreclosure and was thus on notice that its right, if any, could be implicated.  A copy of the signed/stamped certified mail receipt is attached as Exhibit 5 [ECF 50-5, p. 21] which confirms that Plaintiff was in actual receipt of the notice of

foreclosure. This argument fails to provide a basis upon which summary judgment can be granted.

### D. The HOA's CC&R's Are Irrelevant to This Matter and Do Not Invalidate the HOA's Foreclosure

Plaintiff's next argument is that this Court should conclude that the HOA's CC&R's subordinated the HOA's lien priority to Plaintiff's previously-held deed of trust interest. (*See* Motion, p. 12). This argument must fail because the plain language of NRS 116 defeats Plaintiff's argument, as does interpretation of NRS Ch. 116 by the Nevada Supreme Court. The notion that an HOA's CC&R's cannot waive the super-priority of the HOA's lien is set forth in Nevada statutes. NRS 116.1104 specifically states that NRS Ch.116's "provisions may not be varied by agreement, and rights conferred by it may not be waived [. . .] Except as expressly provided in" Chapter 116.

The Nevada Supreme Court clarified that "NRS 116.1104 defeats" the argument that "the mortgage savings clause in [an HOA's] CC&R's [can subordinate an HOA's] super-priority lien to the first deed of trust." *SFR Inv. Pool 1, LLC v. U.S. Bank*, 334 P.3d 408, 418-19 (Nev. 2014)(reversed on other grounds). Accordingly, the Court concluded that "[t]he mortgages savings clause thus does not affect NRS 116.3116(2)'s application." *Id*. at 419. The Nevada Supreme Court affirmed this position in *Wilmington Trust, N.A. v. Las Vegas Rental & Repair, LLC Series 69*, 408 P.3d 557 (Nev. 2017)(unpublished) in which it determined that absent some testimony that bidding as actually chilled by a mortgage protection clause, there was no basis for finding that a sale was commercially unreasonable as a result. No evidence has been submitted that indicates any "chilling" effect on the bidding was present as a result of the "mortgage savings" clause.

Additionally, as recently noted in *The Bank of New York Mellon, supra.,* more is required than the existence of a "savings clause" to invalidate an HOA foreclosure sale. In addressing prior cases, the district court noted that when a savings clause has been used to invalidate a sale it is because the existence of such a clause was coupled with other actions such as misleading mailings. Ironically, Plaintiff relies on *ZYZZX2 v. Dizon,* 2:13-cv-1307-JCM, 2016 WL 1181666 (D. Nev. March 25, 2016)(Mahan, J.) to support its argument that a "mortgage savings" clause, alone, is enough to render a sale invalid. In addressing that very ruling, Judge Mahan, revisited his prior ruling on May 25, 2018 and stated:

> **This court's decision in *ZYZZX2* was rendered in light of the <u>combination of a mortgage protection clause and an HOA's misleading mailings</u>.** *See ZYZZX2*, 2016 WL 1181666 at *4–5 ("The association sent a letter to Wells Fargo and other interested parties stating that its foreclosure would not affect the senior lender/mortgage holder's lien."). Unlike in *ZYZZX2*, the events surrounding the foreclosure sale here make it clear that BNYM was aware that its interest in the property was at risk. *See id.*; *see also* (ECF Nos. 40, 44).
>
> Moreover, NRS 116.1104 provides that "[e]xcept as expressly provided in this chapter, its provisions may not be varied by agreement, and rights conferred by it may not be waived." Nev. Rev. Stat. § 116.1104; *see also Bayview Loan Servicing, LLC v. SFR Investments Pool 1, LLC*, No. 2:14-CV-1875-JCM-GWF, 2017 WL 1100955, at *9 (D. Nev. Mar. 22, 2017) (discussing the reasoning in *ZYZZX2*); *JPMorgan Chase Bank, N.A. v. SFR Investments Pool 1, LLC*, 200 F. Supp. 3d 1141, 1168 (D. Nev. 2016) (holding that an HOA's failure to comply with its CC&Rs does not set aside a foreclosure sale, due to NRS 116.1104).
>
> Accordingly, BNYM's commercial reasonability argument fails as a matter of law, as it failed to set forth evidence of fraud, unfairness, or oppression. *See, e.g.*, *Nationstar Mortg., LLC v. SFR Investments Pool 1, LLC*, No. 70653, 2017 WL 1423938, at *2 n.2 (Nev. App. Apr. 17, 2017) ("Sale price alone, however, is never enough to demonstrate that the sale was commercially unreasonable; rather, the party challenging the sale must also make a showing of fraud, unfairness, or oppression that brought about the low sale price.").

*The Bank of New York Mellon*, 2:16-cv-01959, ECF. 49, p. 14 (emphasis added).  There is no allegation that any such combination of acts took place, thus, as a matter of law, the existence of a mortgage savings clause, standing alone, is insufficient to set aside the HOA's foreclosure.

### E. The Purchasers of the Property at Issue Were "Bona Fide" Purchasers at the Time They Took Possession of the Property

"A subsequent purchaser is bona fide under common-law principles if it takes the property 'for a valuable consideration and without notice of the prior equity, and without notice of facts which upon diligent inquiry would be indicated and from which notice would be imputed to him, if he failed to make such inquiry. S*ee Shadow Wood*, 366 P.3d at 1115 (citing *Bailey v. Butner*, 64 Nev. 1, 19, 176 P.2d 226, 234 (1947)).  In *Bailey*, the Court's discussion focused on whether the purchaser had knowledge of a superior equity.  64 Nev. at 19 (emphasis added).  This holding is consistent with other relevant Nevada law, as well. *See, e.g., Huntington v. Mila, Inc*., 75 P.3d 354 (Nev. 2003) (holding that a purchaser is bona fide so long as it does not have notice of a superior interest which survived the sale)(emphasis added). Thus, the court created a two-part conjunctive test for determining bona fide status:

  1) Did the purchaser give value for the property?

  2) Did the purchaser have notice of a superior interest to the subject property which would have survived the foreclosure sale? *Id.*

Similarly, under NRS Ch. 111, "[a]ny purchaser who purchases an estate or interest in any real property in good faith and for valuable consideration and who does not have actual knowledge, constructive notice of, or reasonable cause to know that there exists a defect in, or adverse rights, title or interest to, the real property is a bona fide purchaser." NRS 111.180. Defendants meet both standards. There is no dispute that Defendants paid valuable

consideration for the Property. While Plaintiff "might believe that [defendants] purchased the property for an amount lower than the property's actual worth, that [defendants] paid 'valuable consideration' cannot be contested. The question is not whether the consideration is adequate, but whether it is valuable." *Shadow Wood*, 366 P.3d at 1115 (Internal citations omitted).

Thus, the only remaining question is whether Defendants had any notice of a <u>superior</u> interest in the Property when it purchased. The undisputed facts show that they did not. There is no evidence, nor has any party asserted that Defendants had actual knowledge of any defect in the HOA foreclosure sale. Moreover, Defendants could not have discovered the alleged impropriety that Plaintiff describes through the most diligent search, as all of the recorded documents recorded prior to Defendants' acquisition of title to the Property suggested that the HOA foreclosure sale was free from defect.

In particular, despite Defendant's allegations that the HOA sale included instances of fraud, oppression, or unfairness, there is no indication of that alleged fraud on the face of any of the recorded documents. None of the recorded documents prior to Defendants' acquisition of their title interest in the Property indicated any defect in the underlying foreclosure sale, which would have put Defendants on sufficient notice to preclude their characterization as bona fide purchasers. There is no legal or factual basis to support this argument, and it therefore does not support summary judgment in Plaintiff's favor. Accordingly, this argument must also be rejected by this Court.

**F. The "Super-Priority" Portion of the Lien Was Not Paid Prior to the Foreclosure**

Plaintiff argues that summary judgment is proper because First 100, the purchaser of the property at the time of foreclosure, made payment of the super-priority amount due and owing to the HOA. *See* Motion, p. 9. Despite making such an assertion, Plaintiff admits that no such

payment was made prior to the foreclosure proceeding taking place.  *Id.* at 10, ln. 5.  In fact, Plaintiff only identifies a single payment of $240 allegedly made from First 100 to the HOA.  *See* Motion, Ex. 4 [ECF 50-4, p. 8].  Even if one were to assume that this payment was directed to the super-priority portion of the HOA lien, the very document relied upon by Plaintiff demonstrates that a balance nevertheless remains of $435.00.  *Id.*  Thus, Plaintiff's own Motion establishes that the super-priority portion of the HOA lien was not satisfied until after the foreclosure took place.

Plaintiff admits that no payment was ever made by any party prior to foreclosure which satisfied the super-priority portion of the lien.  Instead, Plaintiff claims that the lien was "discharged by this agreement", referring to an agreement entered into between First 100 and ULS, the agent responsible for handling the foreclosure sale.  *See* Motion, p. 10.  A copy of the referenced agreement is attached as Exhibit 4 [ECF 50-4] to the Motion, however, the agreement does not reference priority amounts being paid off, either by agreement or by actual payment.  Accordingly, this argument fails.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff has failed to demonstrate entitlement to summary judgment and therefore it is respectfully submitted that the pending motion be denied.

Dated this 19th day of June, 2018.

**Howard & Howard Attorneys PLLC**

/s/ Brian J. Pezzillo
Brian J. Pezzillo, Esq.
Nevada Bar No. 7136
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
*Attorneys for Third Party Defendant Omni Financial, LLC*

# CERTIFICATE OF SERVICE

I hereby certify that I am an employee of Howard & Howard Attorneys PLLC, and that on the 19th day of June, 2018, I caused to be served a true and correct copy of the foregoing ***OMNI FINANCIAL, LLC'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OF WELLS FARGO BANK, N.A., AS TRUSTEE FOR THE POOLING AND SERVICING AGREEMENT DATED AS OF AUGUST 1, 2005 PARK PLACE SECURITIES, INC. ASSET-BACKED PASS-THROUGH CERTIFICATES SERIES 2005-WHQ4***

in the following manner:

(ELECTRONIC SERVICE) Pursuant to Fed. R. Civ. P. 5(b)(3) and LR 5-4, the above-referenced document was electronically filed and served upon the parties listed below through the Court's Case Management and Electronic Case Filing (CM/ECF) system:

Betsy C. Jefferis - bjefferis@psalaw.net

Christopher Ammon Lund - clund@tysonmendes.com, KSavage-Koehm@tysonmendes.com, mcarlos@tysonmendes.com

Dana Jonathon Nitz - dnitz@wrightlegal.net, NVefile@wrightlegal.net

James M Walsh - jmwalsh@wbrl.net, awalsh@wbrl.net, dvollmer@wbrl.net

Krista Nielson - knielson@wrightlegal.net, jcraig@wrightlegal.net, NVefile@wrightlegal.net

Natasha M. Gebrael - ngebrael@ag.nv.gov, jross@,ag.nv.gov, kplett@ag.nv.gov, mlandreth@ag.nv.gov, rcarreau@ag.nv.gov

Thomas E. McGrath - tmcgrath@tysonmendes.com, KSavage-Koehm@tysonmendes.com, mcarlos@tysonmendes.com

/s/ Amber Clayton_____
HOWARD & HOWARD ATTORNEYS PLLC

Defendant Omni Financial, LLC's Opposition to Motion for Summary Judgment