UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

WELLS FARGO BANK, N.A., AS TRUSTEE FOR THE POOLING AND SERVICING AGREEMENT DATED AS OF AUGUST 1 2005 PARK PLACE SECURITIES, INC. ASSET BACKED PASS THROUGH CERTIFICATES SERIES 2005-WHQ4,

Plaintiff,

v.

FIRST 100, LLC, *et al.*,

Defendants.

AND ALL RELATED ACTIONS

Case No. 3:17-cv-00062-MMD-WGC

ORDER

**I. SUMMARY**

This dispute arises from the foreclosure sale of property to satisfy a homeowners' association lien. Before the Court is Plaintiff Wells Fargo, N.A., as Trustee for the Pooling and Servicing Agreement dated as of August 1 2005 Park Place Securities, Inc. asset backed pass through certificates series 2005-WHQ4's motion for summary judgment (the "Motion").[1] (ECF No. 50.) Because the Court is persuaded that Plaintiff is entitled to equitable relief—because the homeowners' association sale at issue here was at least slightly unfair and included a low sale price—and as further explained below, the Court will grant the Motion.

**II. BACKGROUND**

The following facts are undisputed unless otherwise indicated.

---

[1]The Court has reviewed the responses to the Motion filed by Defendant Canyon Hills Landscaping Maintenance Association, Inc. ("HOA"), and Defendant and Third-Party Defendant Omni Financial, LLC ("Omni"), and Plaintiff's replies thereto. (ECF Nos. 53, 57, 58, 64.) The other parties to this case did not file responses to Plaintiff's Motion.

## A. Deed of Trust History

Adam R. Meyer ("Borrower") purchased property located within the HOA at 17745 Sapphire Canyon Court, Reno, Nevada 89506 (the "Property"), on June 20, 2005. (ECF No. 50 at 3.) To purchase the Property, Borrower executed a note secured by a first deed of trust ("DOT") in exchange for $236,438.00. (*Id.* at 3-4.) The DOT was assigned to Plaintiff on May 19, 2014. (*Id.* at 4.)

## B. HOA Lien, Foreclosure, First 100 Loans, and Subsequent Sale

Borrower failed to pay HOA assessments, and the HOA recorded a notice of delinquent assessment lien on the Property through its agent on July 19, 2012. (*Id.* at 4.) On September 12, 2012, the HOA's agent recorded a Notice of Default and Election to Sell pursuant to the delinquent assessment lien against the Property on behalf of the HOA. (*Id.*) On January 14, 2013, the HOA's agent recorded a Notice of Foreclosure Sale pursuant to the delinquent assessment lien against the Property on behalf of the HOA. (*Id.*)

The HOA's agent held the foreclosure sale on the HOA's behalf on August 17, 2013, a Saturday, at 9:00 a.m., at 75 Court Street, Reno, Nevada, 89501 (the "HOA Sale"). (*Id.* at 4, 19; *see also* ECF No. 64-1 at 12.) Defendant First 100, LLC purchased the Property for $100. (ECF No. 50 at 4; *see also* ECF No. 50-7 at 8.) First 100 was the only bidder at the HOA Sale. (ECF No. 50-7 at 7-8.)

First 100 then used the Property as some of the collateral it needed to get two loans. Omni gave First 100 $5,000,000 on May 27, 2014. (ECF No. 27-7 at 2.) Another Third-Party Defendant, Colgan Financial Group, Inc. ("Colgan"), gave First 100 $750,000 on June 10, 2014. (ECF No. 27-8 at 2.) Omni and Colgan recorded deeds of trust corresponding to these loans against the Property. (ECF Nos. 27-7, 27-8.)

First 100 then sold its interest in the Property to Defendants and Third-Party Plaintiffs Bradley L. Foote and Stephen B. Kehres ("Buyers") on October 21, 2014. (ECF No. 50 at 3, 4.)

## C. The Factoring Agreement

Meanwhile, on July 10, 2013, the HOA, First 100, and United Legal Services, Inc. ("United") entered into the Purchase and Sale Agreement (the "Factoring Agreement"). (ECF No. 50-3.) *See also W. Sunset 2050 Tr. v. Nationstar Mortg., LLC*, 420 P.3d 1032, 1036 (Nev. 2018) (referring to a similar agreement to which First 100 was also a party as a factoring agreement). "A factoring agreement is the sale of accounts receivable of a firm to a factor at a discounted price." *W. Sunset 2050 Tr.*, 420 P.3d at 1036 (internal quotation marks and citation omitted). "Such an agreement accords the seller two immediate advantages: (1) immediate access to cash; and (2) the factor [here, First 100] assumes the risk of loss." *Id.* Generally speaking, in the Factoring Agreement, the HOA sold First 100 its interest in any past-due assessments owed on the Property, and several other homes, as specified in the Factoring Agreement and exhibits to the Factoring Agreement. (ECF No. 50-3 at 3.) In other words, the HOA sold First 100 its right to collect on debts for less than the amount of those debts. (*Id.* at 14 (providing that First 100 would pay $240 for the right to collect $480 in past-due assessments and $1,600.55 in collection fees on the Property).) In addition, the Factoring Agreement generally designated United as the agent who would carry out any homeowners' association foreclosure sales on the properties—including the Property—covered by the Factoring Agreement. (*Id.* at 3.)

However, the Factoring Agreement also contained certain clauses more specifically bearing on the HOA Sale. Notably, the Factoring Agreement included a clause providing, in the event of a foreclosure sale, that the HOA agreed to place a pre-set opening credit bid with United of $99. (*Id.* at 5 (§ 3.02(l)).) Further, in that same clause, the HOA agreed to authorize United to start the auction for the Property at that price, and agreed not to bid any higher. (*Id.*)

## D. Procedural History

Plaintiff filed the Complaint on January 31, 2017, asserting the following claims: (1) quiet title/declaratory relief; (2) declaratory relief that NRS 116.3116, *et seq.* is

3

unconstitutional because it violates Plaintiff's due process rights; (3) quiet title based on Plaintiff's due process argument; (4) permanent and preliminary injunction against Buyers; and (5) unjust enrichment against Buyers. (ECF No. 1 at 9-14.)

Buyers counterclaimed against Plaintiff for unjust enrichment and equitable mortgage, seeking a decree quieting title to the Property in Buyers' favor free and clear of Plaintiff's liens and claims—most notably, the DOT. (ECF No. 11.) Further, Buyers filed a Third-Party Complaint against Omni and Colgan for quiet title and equitable mortgage, seeking to establish that Buyers also owned the Property free and clear of Omni and Colgan's claims and liens on the Property. (ECF No. 27.)

Plaintiff moved for summary judgment only on its first claim for quiet title/declaratory relief. (ECF No. 50 at 20-21.) In its Motion, Plaintiff seeks a declaration that the DOT continues to encumber the Property. (*Id.*) However, in the alternative event that the Court were to deny the Motion, Plaintiff stated it seeks summary judgment on its wrongful foreclosure and unjust enrichment claims. (*Id.*) As noted above, only the HOA and Omni filed responses to Plaintiff's Motion, while First 100, Buyers, and Colgan did not.

## III.  LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to

raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *See Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *See Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

### IV. DISCUSSION

Because the Court finds that Plaintiff is entitled to equitable relief—setting aside the foreclosure sale—the Court only addresses Plaintiff's equitable relief argument here.

Plaintiff argues in relevant part that equitable relief is warranted. (ECF No. 50 at 17-20.) The Nevada Supreme Court has held that "courts retain the power to grant equitable relief from a defective foreclosure sale[.]" *Shadow Wood Homeowners Ass'n v. New York Cmty. Bancorp.*, 366 P.3d 1105, 1110 (Nev. 2016). For instance, a court may set aside a sale where there is inadequacy of price as well as proof of slight evidence of fraud, unfairness, or oppression. *See Nationstar Mortg., LLC v. Saticoy Bay LLC Series*

*2227 Shadow Canyon*, 405 P.3d 641, 643, 648 (Nev. 2017) (stating as well that inadequacy of price "should be considered with any alleged irregularities in the sale process to determine whether the sale was affected by fraud, unfairness, or oppression").

Plaintiff more specifically argues that equitable relief is warranted because: (1) the Property's sale price at the HOA Sale was extremely low; (2) the HOA sale took place on a Saturday, outside of normal business hours; and (3) the Factoring Agreement shows that the HOA colluded with First 100 to sell the Property to First 100 at an unreasonably low price. (ECF No. 50 at 17-20.) The HOA responds that the HOA Sale was not unfair because nothing prevented Plaintiff from attending and bidding, the HOA Sale served the public policy interest of protecting the HOA's community from undue financial burdens, and—further addressed below—the Nevada Supreme Court recently sanctioned a similar factoring agreement. (ECF No. 57 at 8-9.) Omni counters Plaintiff's arguments by arguing that Plaintiff's appraisal report on the Property is entitled to little weight, the HOA Sale did not have to be commercially reasonable, and the notices provided to Plaintiff regarding the HOA sale did not have to provide a breakdown isolating the superpriority loan amount. (ECF No. 53 at 6-10.) The Court agrees with Plaintiff, especially considering that Omni does not respond to Plaintiff's collusion argument at all, and the HOA only responds to it unpersuasively.

The Court finds that Plaintiff is entitled to its requested equitable relief—a declaration that the HOA Sale is invalid and should be set aside—because the undisputed evidence supports a finding of: (1) a grossly low sale price as a matter of law; and (2) at least slight evidence of unfairness. *See Shadow Canyon*, 405 P.3d at 648. Plaintiff offered undisputed evidence that the Property was sold for $100 at the HOA Sale,[2] which was significantly below the fair market value of the Property at the time. (ECF No. 50-7 at 8.)

---

[2] Apparently, Plaintiff cannot definitively say this was the price, but offered evidence in the form of deposition testimony where United's 30(b)(6) designee, who conducted the HOA Sale, said First 100 bought the Property for $100. (ECF No. 50-7 at 2, 8.) No other party offered any evidence to the contrary.

As support for the latter, Plaintiff provided an appraisal report showing the Property was worth $192,000 at the time of the HOA Sale. (ECF No. 50-6 at 4.) And while Omni attacks the accuracy of the appraisal report (ECF No. 53 at 8-9), neither Omni nor the HOA offers any evidence of any other fair market value of the Property at the time of the HOA Sale. Thus, the Court concludes the large discrepancy between the price First 100 paid at the HOA Sale and the Property's market value at the time demonstrates the price was grossly inadequate as a matter of law. But this alone is not enough to grant equitable relief.

In addition, the Court is persuaded the terms of the Factoring Agreement as they relate to the HOA Sale support a finding of evidence that the HOA Sale was unfair. Such terms suggest the HOA colluded with First 100 to ensure First 100 could purchase the Property for an unreasonably low price. In the Factoring Agreement, the HOA agreed to set a minimum opening bid of $99, and then never bid higher.[3] (ECF No. 50-3 at 5.) And First 100 purchased the Property at the HOA Sale for only $1 more—$100. (ECF No. 50-7 at 8.) This is at least slight evidence of collusion, which is unfairness that—coupled with the significantly low sale price—justifies setting the HOA Sale aside. *See Shadow Canyon*, 405 P.3d at 648 n.11 (listing "collusion between the winning bidder and the entity selling the property" as an example of unfairness meriting setting the sale aside). This being the case, the Court need not—and does not—address most of the parties' other arguments regarding Plaintiff's request for equitable relief.

But the Court will address the HOA's reliance on *W. Sunset 2050 Tr.*, 420 P.3d 1032, where the HOA argues the Nevada Supreme Court upheld a factoring agreement similar to the one at issue here (First 100 was also a party to that case). (ECF No. 57 at 8.) *W. Sunset 2050 Tr.* does not change the Court's analysis because there, the Nevada Supreme Court did not address the factoring agreement in the context of a lender seeking

---

[3]While there may be sound reasons for the HOA to enter into the Factoring Agreement and the HOA may receive other benefits unrelated to the assessments owed on the Property in return for First 100's services, it seems fundamentally unfair that the HOA agreed to limit the range of the bidding price at a foreclosure sale that is statutorily authorized to protect the HOA's superpriority portion of its lien to essentially $100 and effectively abolish all prior liens.

7

equitable relief to set aside a homeowner's association sale, using the factoring agreement as evidence of collusion. *W. Sunset 2050 Tr.*, 420 P.3d at 1035-37 (addressing the lender's argument that the factoring agreement deprived the HOA of standing to foreclose). Thus, in *W. Sunset 2050 Tr.*, the Nevada Supreme Court simply was not faced with the argument the Court faces here. The Court is also persuaded that a more recent unpublished disposition from the Nevada Supreme Court should not change its analysis— *Nationstar Mortg., LLC v. Kal-Mor-USA, LLC*, 422 P.3d 707 (Table), 2018 WL 3491415 (Nev. 2018)—which no party cited in its briefing. *Kal-Mor* also involved a factoring agreement, and the Nevada Supreme Court rejected the lender's argument it was entitled to equitable relief, but did so because the lender failed "to point to any evidence demonstrating fraud, unfairness, or oppression." *Kal-Mor*, 2018 WL 3491415 at *2; *but see id.* at *2 n.3 (suggesting the lender presented a similar argument to the one here). Here, unlike in *Kal-Mor*, Plaintiff connected the dots to show slight evidence demonstrating unfairness—Plaintiff persuasively argues the Factoring Agreement shows that the HOA and First 100 colluded. The Court agrees with Plaintiff that Plaintiff has shown at least slight evidence of unfairness, and these recent Nevada Supreme Court decisions do not alter the Court's analysis. (ECF No. 64 at 7-8.)

The Court therefore finds Plaintiff is entitled to equitable relief—a declaration that the HOA Sale is invalid and the DOT continues to encumber the Property.

In its Complaint, Plaintiff requests a declaration that the HOA Sale was unlawful and should be set aside. (ECF No. 1 at 10-11.) The other relief requested (except for injunctive relief) is requested in the alternative. Given that Plaintiff has received the relief it requested, the Court dismisses Plaintiff's remaining claims as moot. *See, e.g.*, *Bank of Am., N.A. v. Regency Vill. Owner's Ass'n, Inc.*, Case No. 2:16-cv-00496-GMN-CWH, 2017 WL 3567520, at *3 (D. Nev. Aug. 17, 2017), *appeal dismissed sub nom. Bank of Am., N.A. v. Martinez-Avilez*, Case No. 17-16893, 2018 WL 1401865 (9th Cir. Mar. 2, 2018) (taking this approach under similar circumstances).

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion before the Court.

It is therefore ordered that Plaintiff's motion for summary judgment (ECF No. 50) is granted. The Court declares that the HOA Sale is invalid and should be set aside, and Plaintiff's DOT continues to encumber the Property.

It is further ordered that Plaintiff's remaining claims are dismissed as moot.

It is further ordered that all parties to this case must file a joint status report within ten days of entry of this order, identifying which claims remain following the Court's decision herein, and against whom those claims are asserted.

DATED THIS 25th day of Feburary 2019.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE